IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA MARIE JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-237-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Lisa Marie Johnson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born December 18, 1970, and was forty-three years old at the time of the most recent administrative hearing (Tr. 38, 272, 276). She has a high school education, and has worked as a fast food manager trainee and convenience store manager (Tr. 39, 63-64). She alleges that she has been unable to work since September 11, 2009, due to depression, bipolar disorder, anxiety, and an inability to be around others (Tr. 272, 276, 326).

### Procedural History

On February 25, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 272-79). Her applications were denied. ALJ Larry Shepherd conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 25, 2012 (Tr. 128-36). The Appeals Council remanded the case to the ALJ on September 25, 2013 (Tr. 142-43). ALJ Larry Shepherd conducted a second administrative hearing and determined the claimant was not disabled in a written opinion dated February 26, 2015 (Tr. 10-26). The Appeals Council denied review, so the ALJ's February 2015 written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform the full range of work at all exertional levels with the following non-exertional limitations: (i) understand, remember, and carry out simple, routine, and repetitive tasks; (ii) respond appropriately to supervisors, co-workers, and usual work situations; and (iii) no contact with the general public (Tr. 14). ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the national and regional economies she could perform, *e. g.*, dry cleaner helper, bench assembler, and electrical equipment assembler (Tr. 24).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly analyze the medical source evidence, particularly the opinions of consultative examiners Dr. Green and Dr. Brady, and (ii) failing to support his RFC with substantial evidence. The Court agrees that the ALJ did err in analyzing Dr. Green's opinion, and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of bipolar disorder, generalized anxiety disorder, borderline intellectual functioning, and posttraumatic stress disorder (Tr. 12). The relevant medical evidence reveals the claimant received psychotropic medication management at Mental Health and Substance Abuse Center of Southern Oklahoma ("MHSSO") from January 2005 through July 2014 (Tr. 415-656, 663-782, 794-842). Additionally, the claimant was admitted to St. Anthony Hospital for

psychiatric stabilization on December 31, 2008, after she presented to the Emergency Department and reported worsening depression and ineffective psychotropic medications (Tr. 401-05). She was discharged on January 8, 2009, and was diagnosed with bipolar disorder, type one, most recent episode depressed (Tr. 402).

Keith Green, Ph.D. conducted a consultative psychological evaluation of the claimant and completed a Medical Source Statement ("MSS") on November 25, 2013 (Tr. 783-89). Dr. Green found that the claimant's capacity for retaining new learning, fund of knowledge, attention, concentration, numerical reasoning, and abstract reasoning were impaired, and that her pace was extremely impaired (Tr. 787-88). He also found she had reasonably adequate judgment capability in ordinary social and work-like settings, but seemed to find task-oriented situations stressful (Tr. 787). Dr. Green opined that the claimant was mildly impaired in her ability to (i) understand, remember, and carry out simple instructions; and (ii) to make judgments on simple work-related decisions; and was moderately impaired in her ability to (i) understand, remember, and carry out complex instructions; (ii) make judgments on complex work-related decisions; (iii) interact appropriately with the public, supervisors, and co-workers; and (iv) respond appropriately to usual work situations and changes in a routine work setting (Tr. 783-84). Dr. Green concluded that the claimant could retain and carry out simple and some detailed instructions, and stated that the severity of her impairment of functional psychological capacity for work was moderate (Tr. 788).

At the claimant's request, Douglas Brady, Ph.D. reviewed her records and completed a Psychiatric Review Technique Form ("PRT") on September 16, 2014

(Tr. 849-66). Dr. Brady opined that the claimant was markedly limited in her activities of daily living, ability to maintain social functioning, and ability to maintain concentration, persistence, or pace, and had experienced three episodes of decompensation (Tr. 864). He further opined that the claimant's cognitive disorder not otherwise specified and learning disorder not otherwise specified (provisional) met the criteria for Listing 12.02, her bipolar disorder met the criteria for Listing 12.04, and her generalized anxiety disorder met the criteria for Listing 12.06 (Tr. 854-64).

Evelyn Southers, the claimant's counselor, wrote letters on November 3, 2011, and September 8, 2014, wherein she stated that the claimant experiences an extreme limitation in social function, and has constant deficiencies of concentration and persistence (Tr. 657, 843). Ms. Southers further stated that when the claimant works, her symptoms are a detriment to her overall behavioral health and level of functioning (Tr. 657, 843). Additionally, Ms. Southers completed a Mental Residual Capacity Assessment Form ("MRFC") on February 27, 2012, and September 8, 2014, wherein she opined, *inter alia*, that the claimant was moderately limited in her ability to (i) understand, remember, and carry out very short and simple instructions; and (ii) interact appropriately with the general public; and was markedly limited in her ability to (i) understand, remember, and carry out detailed instructions; (ii) maintain attention and concentration for extended periods; and (iii) accept instructions and respond appropriately to criticism from supervisors (Tr. 658-61, 844-47). Ms. Southers also stated that the claimant has a significant impairment in her ability to process information; her relationships with others are impaired due to hypervigilance, anxiety, and constant

fear; she has an incomplete ability to adapt to her environment which results in severe anxiety and poor self-esteem; and that over long periods of time, her symptoms become severe (Tr. 848).

At the most recent administrative hearing, the claimant testified that she is a slow reader, has difficulty comprehending what she reads and spelling , but can write, do basic math, and make change (Tr. 40, 48). She further testified her daughter used to do the grocery shopping because she "can't be around a bunch of people," but since her daughter moved, she goes grocery shopping around 2:00 p.m., whenever everybody else would normally be at work (Tr. 43-44). She stated she has consistently attended counseling appointments with Evelyn Southers since 2005, and that she has video consultations with Dr. Meredith, her psychiatrist, every two months (Tr. 44-47). As to her daily activities, she testified she sits at home, does not see anybody, and does not do anything (Tr. 55). Regarding specific limitations, the claimant stated in her function report that she cannot be around more than eight people, and cannot pay attention longer than five minutes (Tr. 334, 338).

In his written opinion, the ALJ extensively summarized the claimant's testimony and the medical records. In discussing the opinion evidence, he gave some weight to Dr. Green's opinion, but provided no analysis (Tr. 21). He gave no weight to Ms. Southers' opinion, finding she relied heavily on the claimant's subjective statements, and that her opinion was inconsistent with Dr. Green's assessment, the treatment notes from MHSSO, as well as the claimant's ability to live independently, care for her young son with behavioral issues, and consistently attend her mental health appointments (Tr. 22-23).

The ALJ also gave no weight to Dr. Brady's opinion, noting it was made in the context of generating evidence for the claimant's appeal, and was inconsistent with the other medical evidence of record, her routine and/or conservative care, lack of emergency room visits or inpatient hospitalizations after he alleged onset date, as well as her ability to care for her son, do household chores, drive, grocery shop, and attend mental health care appointments (Tr. 24).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ assigned Dr. Green's opinion some weight, but provided no analysis at all in relation to the pertinent factors. He appeared to adopt Dr. Green's

opinions that the claimant was moderately limited in her ability to understand, remember, and carry out complex instructions, and to interact appropriately with the public because he limited the claimant to simple, routine, and repetitive tasks with no contact with the general public.  The ALJ nonetheless rejected (by failing to include or discuss) Dr. Green's opinions that the claimant was moderately limited in her ability to interact appropriately with supervisors and co-workers, and respond appropriately to usual work situations and to changes in a routine work setting.  This was particularly important here because the ALJ rejected Ms. Southers' opinion partially based on Dr. Green's assessment.  It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e.g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). In addition to evaluating Dr. Green's findings according to the appropriate standards, the ALJ should have explained why he found certain aspects of his findings persuasive but not others.  *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence

conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Because the ALJ failed to analyze probative evidence potentially inconsistent with his RFC determination, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of September, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**